1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   WILLIAM BASTIEN,                        No.  2:12-cv-02755-JAM-TJN

12            Plaintiff,

13        v.                                 **ORDER**

14   ABF FREIGHT SYSTEMS, INC., and
     DOES 1 THROUGH 50, inclusive,
15
16            Defendant.

17        The matter is before the court on Defendant's Motion for Summary Judgment (ECF No.

18   25) on Plaintiff's ERISA § 510 claim (ECF No. 1-1).  For the reasons discussed below,

19   Defendant's Motion for Summary Judgment is granted.

20

21   **I.      Background**

22        Plaintiff William Bastien ("Plaintiff") was hired by Defendant ABF Freight Systems, Inc.

23   ("ABF") as a line driver in November 2003.  (Pl.'s Opp. to Def.'s Statement Und. Facts, ECF No.

24   35 at ¶ 1.)  Under the terms of Plaintiff's pension plan, a participant between the ages of 65 and

25   70 may apply for what the plan calls "Normal Retirement," (hereinafter "Normal Retirement) and

26   thereby begin to receive pension benefits.  (ECF No. 35 at ¶ 11.)  On May 6, 2010, at age 65,

27   Plaintiff submitted an application for Normal Retirement benefits and received his first monthly

28

                                            1

1  payment on August 16, 2010.[1]  (ECF No. 35 at ¶ 24.)  Plaintiff continued to work while receiving

2  these payments, at the same level of seniority, until February 2011.  (ECF No. 35 at ¶ 38.)  In

3  early February 2011, ABF learned that Plaintiff had become a normal retiree.  (ECF No. 35 at ¶

4  39.)  Subsequently, ABF informed Plaintiff that this retirement status had triggered a break in his

5  seniority and that he was being removed from the ABF seniority list.  (ECF No. 35 at ¶ 40.)

6  Plaintiff states he was asked to turn in his company cards, keys, and fuel; thereafter, Plaintiff

7  ceased working for ABF.  (Pl.'s Mem. in Opp. to Mot. Summ. J., ECF No. 36 at 7.)  Plaintiff has

8  continued to receive his normal retiree pension.  (ECF No. 35 at ¶ 55–56.)

9        On February 23, 2011, Plaintiff, as represented by his union Local 439, challenged his

10  removal from the ABF seniority list by filing a formal grievance.  (ECF No. 35 at ¶ 44.)  On May

11  3, 2011, a Joint Western Area Committee ("JWAC") panel heard Plaintiff's grievance and

12  thereby denied his claim. (ECF No. 35 at ¶ 46.)  In its denial, the panel referenced its decision

13  from a 2002 JWAC case, No. 2-02-6160, in which an employee of Consolidated Freight was

14  removed from the seniority list after he elected to draw normal benefits under his pension plan.[2]

15  (ECF No. 35 at ¶¶ 32, 46.)

16        On August 20, 2012, Plaintiff filed a complaint in California superior court, alleging four

17  state law causes of action and a claim under ERISA § 510, 29 U.S.C. § 1140.  (ECF No. 1-1.)

18  Defendant ABF removed to federal court where the state law claims were dismissed, leaving the

19  ERISA § 510 claim as the sole remaining cause of action.  (ECF No. 12.)

20        This Court now considers Defendant's Motion for Summary Judgment (ECF No. 25) on

21  the ERISA § 510 claim.  The thrust of the claim is that Plaintiff elected to receive Normal

22  Retirement benefits under his pension plan but as a consequence of doing so, he was removed

23

24  [1] The Complaint states that Plaintiff was 66 years old when he submitted his application for Normal Retirement
benefits.  (ECF No. 1-1 ¶ 15.)  Plaintiff clarifies in his deposition that he was actually aged 65.  (ECF No. 25-4, Ex. A
at 55:3–20.)

25  [2] Defendant ABF states in the final sections of its pleadings (ECF No. 25-1 and ECF No. 38) that Plaintiff is barred
from re-litigating his case because the grievance committee (JWAC) had already unanimously denied the claim.

26  Article 45, Section 1(b) of the CBA provides that where JWAC has by majority vote settled a dispute, this decision
shall be binding on the parties with no right to appeal.  (CBA, Art. 45 § 1(d), ECF No. 25-4, Ex. C.)  The parties do

27  not brief the Court further, for instance on whether an employee is barred from further appeal before an employee
grievance committee, or whether the federal courts should likewise be barred from hearing this action.  In any event,

28  summary judgment is granted on other grounds and the Court does not reach this issue.

1   from the seniority list.  (ECF No. 35 at ¶ 40.)  Plaintiff contends that this removal was equivalent

2   to being fired, and Plaintiff no longer works for ABF.  (ECF No. 36 at 7–8.)  Plaintiff alleges

3   generally that this removal policy, as articulated in his collective bargaining agreement, but also

4   as it played out in his case, violates ERISA § 510.  (*See* ECF No. 1-1 at ¶¶ 20–25.)

5

6       **II.      Statutory Framework**

7          i.     Summary Judgment

8          Summary judgment is appropriate when the moving party demonstrates that there is no

9   genuine issue as to any material fact, and therefore the movant should be entitled to judgment as a

10  matter of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

11  Under summary judgment practice, the moving party always bears the initial responsibility of

12  informing the district court of the basis of its motion, and identifying those portions of "the

13  pleadings, depositions, answers to interrogatories, and admissions on file together with the

14  affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

15  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment should be entered

16  against a party who does not make a showing sufficient to establish the existence of an element

17  essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id*. at

18  322.

19         If the moving party meets its initial responsibility, the burden then shifts to the opposing

20  party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

21  *Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585–87 (1986).  The opposing party must

22  demonstrate that the fact in contention is material, i.e. that the fact might affect the outcome of

23  the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  In

24  doing so, the opposing party may not rely upon the denial of its pleadings, but is required to

25  tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

26  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party need

27  not establish a material issue of fact conclusively in its favor, but only that "the claimed factual

28  dispute be shown to require a judge or jury to resolve the parties' differing versions of the truth at

3

1    trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).  The evidence of the

2    opposing party is to be believed, and all reasonable inferences that may be drawn from the facts

3    placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.

4    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

5    produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight*

6    *Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

7         ii.      ERISA § 510

8              ERISA § 510 provides, in relevant part:

9                    It shall be unlawful for any person to discharge, fine, suspend,
10                   expel, discipline, or discriminate against a participant or beneficiary
                     for exercising any right to which he is entitled under the provisions
11                   of an employee benefit plan … or for the purpose of interfering
                     with the attainment of any right to which such participant may
12                   become entitled under the plan ….

13   29 U.S.C. § 1140.  ERISA § 510 was enacted with the purpose of preventing an employer from

14   discharging or harassing employees so as to keep them from obtaining vested pension rights.  *See*

15   *Lojek v. Thomas*, 716 F.2d 576, 680–81 (9th Cir. 1983) (reviewing ERISA's legislative history).

16   When a plaintiff seeks relief for an alleged § 510 violation, he must show that he was entitled to

17   an ERISA-protected right, that he suffered an adverse employment action, and that the employer

18   acted with the specific intent to interfere with this right.  *Kimbro v. Atlantic Richfield Co.*, 889

19   F.2d 869, 881 (9th Cir. 1989); *W. v. Greyhound Corp.*, 813 F.2d 951, 954 (9th Cir. 1987); *Dytrt v.*

20   *Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990).

21

22        **III.    Analysis**

23        i. ERISA-protected right

24             The Complaint is not totally forthcoming as to which right under ERISA Plaintiff is

25   invoking, but the Court infers that the issue here is the same as was articulated at Plaintiff's

26   grievance hearing before the Joint Western Area Committee on May 3, 2011.  There, Plaintiff

27   challenged ABF's policy of removing employees from the seniority list, after they had elected to

28   become normal retirees and receive their pension benefits.  (JWAC Hearing of Pl.'s Grievance,

1    Case No. 5-11-2971, ECF No 25-6, Ex. O at 1–4.)  Because removal from the seniority list may

2    be effectively the same as termination, this policy arguably violates ERISA § 510, which makes it

3    illegal to discharge or discriminate against employees for exercising pension rights.  Ultimately, it

4    appears that Plaintiff's main claim is against the terms of his collective bargaining agreement and

5    the JWAC decision enforcing that agreement.

6          Plaintiff's employment with ABF was governed by the National Master Freight

7    Agreement and the Western States Area Supplemental Common Clauses, which together

8    establish the collective bargaining agreement (hereinafter "CBA") that governed the terms of

9    Plaintiff's employment.  (ECF No. 35 at ¶ 5.)  The parties agree that Plaintiff's CBA governed his

10   seniority rights while employed with ABF.  (ECF No. 35 at ¶ 19.)  The CBA provides that

11   "[s]eniority shall be broken" by retirement and other events such as termination and voluntary

12   quitting.  (CBA, Article 43 § 1, ECF No. 25-4, Ex. C.)  The CBA also provides that JWAC shall

13   render final decisions interpreting provisions of the CBA.  (CBA, Article 45 § 1(d), ECF No. 25-

14   4, Ex. C.)

15         Under the terms of Plaintiff's pension plan, a participant between the ages of 65 and 70

16   may apply for what the plan calls "Normal Retirement," and thereby begin to receive pension

17   benefits.  (ECF No. 35 at ¶ 11.)   Normal Retirement under the plan permits a retiree to receive

18   pension benefits even if he remains employed with the company.  (ECF No. 35 at ¶ 12.)

19   However, the pension plan does not provide a normal retiree the right to continue working at the

20   same level of seniority at the company.  (ECF No. 35 at ¶ 17.)  Seniority is relevant because,

21   among other advantages, it allows ABF drivers to bid on "run" or "job" start times in the order of

22   their rank on the seniority list.  (ECF No. 35 at ¶ 20.)  Upon removal, ABF's practice is to collect

23   that employee's keys, identification cards, and company credit cards and that employee is no

24   longer able to bid on runs.  (ECF No. 35 at ¶ 41–43.)  However, a retiree is not precluded from

25   continuing to work in some capacity at ABF, and ABF has employed qualified drivers who lost

26   their seniority status due to normal retirement.  (ECF No. 35 at ¶ 52.)

27          On February 23, 2011, after Plaintiff had stopped working at ABF, Plaintiff filed a

28   grievance report through the Teamsters Local Union No. 439.  (ECF No. 35 at ¶ 44.)  On May 3,

1   2011, a JWAC panel heard Plaintiff's grievance; that panel was composed of an employee of

2   another trucking company, two union representatives, and two employer representatives.  (ECF

3   No. 35 at ¶ 45.)  The panel denied Plaintiff's claim, with reference to its decision from a 2002

4   JWAC Case, No. 2-02-6160, in which an employee of Consolidated Freight was removed from

5   the seniority list after he elected to draw Normal Benefits under his pension plan.  (ECF No. 35 at

6   ¶ 46.)   The 2002 JWAC decision held:

7

8   [I]ndividuals who receive their earned Western Conference
    Teamsters Pension Benefit between 65 and 70 years of age shall be
9   considered as having retired under the provision of Article 43,
    section 1 of the [WSA] common clauses … [I]ndividuals who begin
10  receiving their earned Western Conference of Teamsters Benefit
    between 65 and 70 years of age … shall suffer a break in seniority
11  at the time they receive their WCT Pension Benefit.

12

13   (JWAC Decision No. 2-02-6160, ECF No. 25-6, Ex. M.)  Accordingly, it appears to the Court

14  that ABF removed Plaintiff from the seniority list as stated in the collective bargaining agreement

15  and as interpreted by JWAC.  Plaintiff does not provide a further reason to think that the removal

16  policy per se violates ERISA § 510.

17        Plaintiff alleges disparate treatment and contends that there are other employees governed

18  by the CBA who elected to become normal retirees but were not removed from their seniority

19  lists; Plaintiff states he can provide the names of these people if necessary.  (ECF No. 36 at 6.)

20  However, this is hearsay evidence – an out of court statement offered for the purpose of showing

21  that normal retirees do not need to be removed from the seniority list – and hence is inadmissible

22  on a motion for summary judgment.  *See Beyene v. Coleman Sec. Services, Inc.* 854 F.2d 1179,

23  1181-82 (9th Cir. 1988) (holding that only admissible evidence – not hearsay – may be

24  considered on a motion for summary judgment).  As discussed, Plaintiff also agrees that ABF has

25  a practice of removing normal retirees from the seniority list.  (ECF No. 35 at ¶ 50.)

26        Plaintiff argues that he was never given notice of the prior 2002 JWAC decision that was

27  applied in his case and that it is the obligation of the union to provide such notice to employees,

28  especially to people like Plaintiff who were close to the affected age group.  (ECF No. 36 at 9.)

1   Plaintiff also points out that the pension plan booklet does provide (in addition to the language

2   discussed, *supra*, regarding seniority and retirement): "[T]o begin receiving normal retirement

3   benefits, you do not need to be retired from employment." (Western Conf. Team. Pension Plan

4   2008 Summ. Plan Booklet, ECF No. 25-5, Ex. E at 68.)   Indeed, Plaintiff may very well have

5   been operating under the belief that he could elect for normal retirement while remaining at the

6   same level of seniority, as he alleges. (ECF No. 36 at 2.)   However, the pension plan booklet

7   also provides: "Your [CBA] may control whether you can still continue your covered work after

8   you start receiving your pension benefits.  Many contracts have rules that concern loss of

9   seniority or other rights at retirement." (ECF No. 25-5, Ex. E at 68.)  Moreover, the meaning and

10  effect of Plaintiff's Normal Retirement was interpreted by the JWAC committee, prior to

11  Plaintiff's filing and as re-applied to Plaintiff's case, and this Court has not been given an

12  additional reason to overturn this interpretation under the vehicle of an ERISA § 510 claim.

13      Plaintiff makes a valid point in that ABF had constructive knowledge of his normal

14  retirement status in the months before he was removed, because, allegedly, Plaintiff had talked

15  about it with employees of higher rank in the company, including the city dispatcher, operations

16  manager, and terminal manager. (ECF No. 36 at 8.)  These people never informed Plaintiff of the

17  consequences of electing to retire and thus, it is argued, Plaintiff's belief was reinforced that he

18  could work at the same seniority while collecting his pension. (ECF No. 36 at 8.)  Again,

19  however, it has not been made clear to the Court why the failure of these individuals to set in

20  place Plaintiff's seniority removal earlier should lay the foundation for an ERISA claim for

21  interference with pension rights.[3]

22      The Court does not find that the loss of seniority in this case invokes an ERISA-protected

23  right.

24

25

26  [3] Plaintiff also argues that ABF had knowledge that its practice of removing employees from the seniority list was
    suspected to be in violation of ERISA, and requests additional time to conduct discovery into this matter. (ECF No.

27  36 at 9–10.)  Plaintiff has not provided briefing, either in the form of affidavits or declarations, that shows a specific
    reason why further discovery is necessary.  *See* Fed. R. Civ. Proc. § 56(d).  Accordingly, the Court denies this
    request.  In any case, the Court thinks that the Parties have adequately briefed the Court on the alleged conflict

28  between ABF's seniority policy and ERISA § 510.

ii. <u>Adverse Employment Action and Specific Intent</u>

Because the Court does not find that Plaintiff has raised a triable issue as to an ERISA-protected right, it need not analyze the remaining elements of an ERISA § 510 claim: that Plaintiff suffered an adverse employment action committed by the employer with the specific intent to interfere with pension rights. *See Celotex Corp.*, 477 U.S. at 322 (mandating the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). However, as referenced below, the Court finds that Plaintiff has not raised a triable issue of fact as to these remaining elements.

With respect to an adverse employment action, Plaintiff alleges he suffered a "constructive termination" when ABF collected his keys, fuel, and identification cards, and asked that he remove his personal belongings from the premises. (ECF No. 36 at 7.) The Ninth Circuit has held that a "constructive discharge" is established if working conditions "become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job ...." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). The facts proffered by Plaintiff do not constitute a "constructive discharge" along these lines. The Court understands that Plaintiff uses the term "constructive termination" just to mean he was effectively terminated, i.e. fired, over and above simple removal from the seniority list. However, Plaintiff admits that once ABF becomes aware of an employee's election to receive Normal Retirement benefits, it is ABF's practice to remove that person from the seniority list, and subsequently, to collect the employee's keys, identification cards, and company credit cards. (ECF No. 35 at ¶¶ 43, 50.)

Importantly, Plaintiff has not re-applied to continue working at ABF after his departure in February 2011. (Pl.'s May 3, 2013 Dep., ECF No. 25-4, Ex. A at 125:2–13.) The Court has considered carefully Plaintiff's deposition testimony regarding this matter, in addition to the parties' briefings. Plaintiff states he was under the impression that he had been terminated and it was futile for terminated employees to pursue being rehired. (ECF No. 25-4, Ex. A at 125–128.) However, Plaintiff has not proffered evidence that he actually inquired about working again for

8

1    ABF, or that ABF unlawfully foreclosed this opportunity in a way that violates ERISA.  The

2    Court understands Plaintiff's point that, had he not elected to retire at age 65, and instead waited

3    until age 70 ½, his monthly pension benefit at that point may have been greater.  (ECF No. 36 at

4    2.)  However, Plaintiff did elect to retire at age 65, and there is no indication that he disagrees

5    with the pension amount he has been receiving since August 2010.  Plaintiff contends he should

6    have been given the opportunity, once ABF learned of his normal retirement status, to explore

7    options such as foregoing his pension and to continue working, rather than be immediately

8    removed from the seniority list.  (ECF No. 25-4, Ex. A at 170–173.)  However, Plaintiff has not

9    proffered evidence that he actually inquired about this option or explored future employment

10   along these lines; in any event, the Court has not been given a reason to think that this option is

11   normally available to retirees and thus relevant to this ERISA claim.

12          With respect to the § 510 requirement that ABF specifically intended to interfere with

13   Plaintiff's pension rights, the parties agree that ABF's motivation in removing Plaintiff from the

14   seniority list was to comply with the collective bargaining agreement.[4]  (ECF No. 35 at ¶ 48.)  As

15   discussed, Plaintiff's basic allegation is that the CBA, as interpreted by JWAC, contains a policy

16   that violates ERISA § 510.  The Court cannot so find.  Its decision here makes no statement as to

17   whether ABF handled Plaintiff's departure with the proper decorum.  However, Plaintiff has not

18   raised a triable issue as to whether ABF acted specifically to interfere with Plaintiff's pension

19   rights.

20

21   ///

22

23

---

24   [4] Where there is no direct evidence, as is the case here, of a specific intent to interfere with ERISA rights, courts have
     held that the *Burdine/McDonnell Douglas* burden-shifting approach used in Title VII and ADEA cases is applicable.
25   *See Ritter v. Hughes Aircraft Co.,* 58 F.3d 454, 457 (9th Cir. 1995); *Humphreys v. Bellaire Corp*., 966 F.2d 1037,
     1043 (9th Cir. 1992); *Cole v. Permanente Medical Group, Inc.* 2013 WL 1662857 *3 (N.D. Cal. 2013).  Under this
26   approach, plaintiffs must make a prima facie showing that the employer acted with the intent to interfere with ERISA
     rights.  A presumption then arises that the employer unlawfully discriminated and the burden of production shifts to
27   the employer.  The employer must rebut this presumption by producing a legitimate, nondiscriminatory reason for the
     action taken.  If the employer is successful, the burden then moves back to the plaintiffs to produce evidence raising a
28   genuine issue of material fact as to whether defendant's reason was pretextual.  *See Aragon v. Republic Silver State
     Disposal, Inc.* 292 F.3d 654, 658–659 (2002).

**IV.     Conclusion**

For the reasons discussed above, Defendant ABF's Motion for Summary Judgment (ECF No. 25) on Plaintiff's ERISA § 510 claim (ECF No. 1-1) is granted.

Dated: February 27, 2014

Troy L. Nunley
United States District Judge

10